Thank you, Your Honor. Good morning. May it please the court. I'm Kevin Hall and I'm here with Todd Kell representing Governor Nikki Haley. I'm joined also by Mike Pauly, who is representing the law enforcement defendants in this case, and I'll be presenting for all of the defendants in this case. What we have here is a qualified immunity case, and the question, as it usually or almost always is, is on the pleadings, is there a constitutional right alleged that could have been violated? In this instance, the right alleged is a right to occupy on a permanent basis, on a 24-hour basis, seven days a week in what the occupiers call a physical occupation of the Statehouse. They say they wanted to be there 24 hours a day and they wanted to, quote, sleep overnight on the grounds. This is all from their Third Amendment complaint. In addition, the affidavit submitted by the occupiers more than a month after they had been continuously present on the grounds says they want to continue their occupation. So the question before the court is do you have a constitutional right in America to reside permanently and make public property your home for eating, sleeping, drinking, biological needs? The answer to that question is no. I cite that to you or say that to you on the strength of the Clark case, which is the, I think, the closest authority out there dealing with a protest in the Lafayette Park across from the White House in which the National Park Service was confronted with a similar situation. The question there was does erecting a tent city and sleeping overnight… At any time when they were sleeping overnight or in any tent city, they were standing, protesting at 6 p.m. on public grounds? That is accurate. And that's what the complaint alleges at paragraph 83. Well, if you extract paragraph 83 from the complaint and you take paragraph 83 as the complete expression of the behavior for which constitutional sanction is sought, that would be an argument. I would contend to you that even if you isolated the behavior that narrowly and in that truncated a fashion, you still have reasonable time, place and manner restrictions that authorize the arrest. There's no question that the Statehouse grounds themselves close at 530. Now, that's the normal end of the day's business. That is from… Let me ask you about that. I'm looking at condition three on the conditions for use of the Statehouse grounds. Yes, Your Honor. And it says nothing shall be done to interfere with the public's free access to the ground. Well… Where is the limitation, time limitation in that statement? Well, there isn't in that portion which Your Honor quoted. There is in paragraph eight. Paragraph eight indicates the time parameters for activities in the buildings of the Statehouse and activities on the grounds. And those are consistent generally with the same time limitations that appear in 101140 of the code for the time period of operation of the buildings there which is 530. So, you have law enforcement officers after a public place is closed or ended its regular day of business ask folks to leave and they don't leave. So, people can't be on the grounds after 6 o'clock? They can be on the grounds, but they can be asked to leave as well. And if they refuse, they are subject to the trespass risk. This is similar in the Abernathy case out of Charleston. And that's clear from these conditions? Well, I think so. It's also clear from… It is clear from the conditions when the close of business is. There's no question. And it's clear from the Governor's letter and her press conference that the only people that were to be arrested after 6 p.m. on the grounds were Occupy Columbia protesters, right? It is true that in the correspondence and in the communications that the subject matter discussed was this particular protest. That is true. Nobody else was arrested after 6 p.m. on November 16th, whatever the year was, were they? Only Occupy Columbia. To my knowledge, that's correct, Your Honor. The question, though, is does the government have the authority to have hours of operation for public places? And when those hours of operation are exceeded and someone is asked to leave, is that enough? Now, this is, again, only in the instance where you accept Paragraph 83 in isolation without all of the other facts of the complaint. We don't even get to this discussion of 536, you know, 5 p.m. and grounds versus buildings. We don't get into Paragraph 3, Paragraph 8, and 101140 of the code unless you artificially narrow the right asserted. It's clear from the case law that the right has to be specific. It has to be specifically defined. But to take a film, if you will, had been going for more than 30 days, and to snapshot that into one isolated moment and suggest that that isolated moment, as articulated by Paragraph 83 of the complaint, is the right asserted, I think is inaccurate.  The lawyers get three cracks at it here. This is a Third Amendment complaint and state very clearly what the goal is. The goal is to occupy the Statehouse. That's the expression for which they seek constitutional sanction. They want to be there 24 hours a day. It is clear from the record that they had a process for meals, that they had a police force, if you will, a peace committee. They had, obviously, the ability to sleep there. Now, they were going to live there. And they weren't bashful about that, and that is what they were communicating. So, again, to go to Paragraph 83 and say that that paragraph, generic as it is, talking about petitioning and protesting the government in some generalized expression, is the right. Paragraph 85, Paragraph 86, they both talk about protest and petitioning the government, in addition to assembling. They do, and they do it on the factual backdrop. They do it on the factual backdrop of the previous 80-some-odd paragraphs, which describe in specificity the behavior for which constitutional sanction is sought. Let me shift gears for a moment. Let's assume, for the purposes— Let me before you shift gears. You say they can't be on the grounds after 6. Well, when do they get to come back? I believe the statute establishes the hours of the Statehouse grounds operating. I believe from—I'm going on memory here, and I need to grab the statute. I want to say 8.30 to 5.30 p.m., I believe. I've got the statutory reference. And, again, 10.11.40 is the provision that I'm referring to. Okay, that's fine. Sorry. That's all right. I got it. Assuming, for the purposes of argument and argument only, that there is a constitutional right defined here specifically, you do then have the question of, was that right clear? Was it clearly established so that these law enforcement officers would know it and would knowingly violate it by arresting these individuals? And I think the answer to that question is certainly no. It wasn't clearly established. Again, I hearken back to the Clark case. And I point out in the Clark case the very similar factual backdrop and seven of the nine justices of the Supreme Court seriously doubted that a 24-hour vigil was permitted by the Constitution. Justice Berger, in a concurring opinion, said that this claim of First Amendment expression, quote, trivializes the First Amendment. So the notion that a police officer in this context would perceive a clearly established right, I think, is an erroneous one. I also would point out that the lower court and the occupiers in the lower court rely on the Edwards case from the United States Supreme Court in 1963, a very factually different circumstance. The Edwards case doesn't involve a 30-day occupation. It doesn't involve eating, sleeping, and drinking and fulfilling bathroom needs. It instead had a group of folks who were arrested in 1963 who had been on the State House grounds less than an hour, and they were arrested for singing loudly. They were not seeking to permanently live on the ground as the occupiers were and as the occupiers say in their complaint. They were not seeking to sleep on the grounds as the occupiers were and say they were in their complaint. They weren't damaging the grounds as the occupiers were. They were not creating a sanitation issue. They had not erected food tables and washing stations and a mash unit to serve the needs. Was all of that there at 6 p.m. when they were arrested? There is some lack of clarity on that. In the complaint, the allegation, I believe, is that they had removed their stuff. But again, if you snapshot and isolate one moment in a 30-day period, you still have reasonable time, place, and manner restrictions, and you still have a right that is not clearly established. The police officers are approaching this in the context of this ongoing physical presence on the State House grounds. We've seen even in other occupied cases in Fresno that a 24-hour day period, the district court there determined was not permitted or required by the Constitution. So again, I think it is artificially narrow to focus on the number 83 in sequence paragraphs and say that the general references to protesting or petitioning the government state accurately are completely what the right asserted here is. You know, usually we don't get this kind of issue at the 12B6 or 12C stage. It comes after summary judgment. You've just got a tough road to hoe, I think, for us to make these kind of decisions that are important on qualified immunity at this stage. Well, again, though, Your Honor, I would say if you went further, we're clearly on a 12B, 12C stage. We didn't convert to Rule 56 here. I agree with you. But the question is, again, what is the right at issue? And to say— We all don't agree. The two sides don't agree, do you? Well, I don't think we do. I tell you, I think the complaint rather than argument after the fact is the way you determine the right, and the complaint is pretty clear. The complaint says we're going to sleep, eat, drink, and go to the bathroom there. That's what the complaint seeks. So with some help and nudging from the district court, I suspect we'll hear something a little different than that today, and we've certainly heard something a little different in the brief as to what the right is. But there's no question what the right is and what the right articulated is in the complaint. And to take a general expression that incorporates all of the behavior in the preceding 80-some-odd paragraphs and say, no, no, this is just a general right to petition or protest, I think ignores the factual context that is required of the court. How many did you arrest, 19? I'm sorry? Was there 19 folks you arrested? I'm not sure. I'm getting a nod. I believe that's right. Nineteen that you arrested in order to put up a Christmas tree. Well, not in order to put up a Christmas tree. But that's what the governor's letter said. Well, there is reference. The senator's letter said we need to get the Christmas tree up. We've got to get those people out of there. There is a reference to. And the prosecutor dropped the charge. That is correct. Did he announce why he dropped the charge? I can tell you that if he did, I don't know it. I don't know it as I stand here. He's trying to prosecute you. That is accurate. That's the end of it. As far as we know, for this record, they're over with. That is correct. Look, we clearly have an atmosphere here that had been going on for some period of time. And again, I would suggest to the court that you can't isolate one frame of a 30-day movie and ignore 80-some paragraphs of allegations in a complaint in defining the right at issue here. I will hit in the five minutes reserved the time, place, and manner restrictions that I would argue to you apply even if the government were to fail on the argument about whether a right exists or whether it was clearly established. And I'll save that for later. Let me ask you this. Yes, Your Honor. The statute you referred to when I asked you about the question, is that the parking statute? It is. It says, and it references the hours of operation. It says you can't, during those hours, you can't use any of the driveways, alleys, or parking spaces on the property. Right. Are these people using alleys, driveways, or parking spaces? No. I don't mean to suggest that the statute says the hours of the Statehouse are from X to Y. What I'm suggesting is if you want to know what the hours of the Statehouse are, you've got at least three sources to look at, or two sources. You've got the conditions which state in-building time and surface, ground surface, outside time. You also have a statute that communicates the same thing. Now, it does so in the context of telling you where you can't park. Right. It doesn't say the hours of operation are colon. Well, if I just look at the conditions for use, then I'll go back to my original question. You say you can't be there after 6, and my question is, when can you come back? If I just look at the conditions. Well, I don't think the conditions specify a start time. I can tell you that in the— It says something about 830. Well— That comes from the statute. From the statute. About parking. That's where that— Oh, the parking, the parking. I can tell you in the statement that the Governor made, which is part of this and the press conference, you know, she said very clearly, come back in the morning. Please, come back in the morning. Express yourself, but we can't have a 24-hour occupation. Please come back in the morning. Now, again, I can't give you— Well, if they were arrested, they'd have to—that would assume they'd get out of jail by the morning. Well, she said it certainly before they were arrested, and I don't know when they got out of jail in the morning. But for them to have been arrested, it meant that they had to—that they certainly knew the hours. They had been given some— Look— Nobody can be on the Statehouse grounds after 6 p.m.? I've walked across the Statehouse grounds after 6 p.m. many times. I can tell you, though, that it is not open for operation, and if a law enforcement officer pointed that out to me and asked me to leave, I believe I'd be bound to do it. I don't believe I can simply stay there or sleep there. If a homeless person or someone chose to sleep on a grate there and was asked to move along and said, no, I'm expressing myself, I'm sleeping, I'm expressing my plight in America, would that be permissible? Could the officer arrest or require their removal? I think so. There is a closed time. How else would you ever maintain, I submit, a park, a campground? Campgrounds say you can stay for 21 consecutive days. Well, I'm staying for 22. I'm occupying. I'm asserting myself. I'm expressing myself. Does that render the 21-day limitation impermissible? I don't think so. I'll be seated. Okay. Thank you, Mr. Hall. Thank you. Let's hear from the appellee. Good morning, Your Honors. Drew Radiker here for the appellees. There's a distinction drawn in the statutes and even in the document-labeled conditions for use of the Statehouse and grounds between the Statehouse building and the Statehouse grounds. One could argue, reading from the statutes and even from the conditions, that the Statehouse building closes at 5.30 p.m. Grounds are open 24 hours a day. The parking and driveway statute, Section 10-1140, that counsel for the appellants cited, specifically says they're closed during these times of day, 8.30 to 5.30, when the building's open, meaning you can use them and be there when the building is not open, just like you can the rest of the Statehouse grounds. So in this case, Your Honor, we sought injunctive relief as well as damage. And many of the allegations in the complaint relate to that. But what the complaint does allege is what the occupiers were arrested for was protesting. And specifically, if you look at the picture of them right before they're arrested, is picketing. The denial of their being allowed to sleep or even be on the Statehouse grounds all day long. Now, the appellants have said that Judge Curry erred in viewing the right at stake as a general right to protest, but that is not how Judge Curry characterized what the right at issue was. Judge Curry viewed the right as a right to stand arm-in-arm in protest on the Statehouse grounds past 6 p.m., despite having been told, you and none of your group may be here at that time. There's nothing in the complaint, or even the record at all, that establishes that the appellees damaged property or committed crimes, much less that any one of the 14 individual plaintiffs in this case did that, and that there was reason to believe that, say, Melissa Harmon did, or that Waleed Hakeem did. In any event, the appellants allow all of the prior activity before 6 p.m. on November 16th that the appellees engaged in. They permitted it. They could not have arrested them for doing that. What they arrested them for was what they told them they would arrest them for, being on the Statehouse grounds after 6 p.m. There was no law that said that they could not do that, and no reason to believe that there was. If the rules or the conditions that officers are attempting to enforce are unclear or ambiguous, then why aren't they entitled to qualified immunity? What they're unclear or ambiguous about are not the things that make them clearly unconstitutional. They're clearly unconstitutional because, well, one thing, assuming that anyone who had the authority to enforce them really contends that they had the force of law. Let's just make that assumption. Your voice dropped right at the end. I'm sorry. Assuming that anyone who would have had the authority to enforce them does really contend that they have the force of law, which is an assumption, because Judge Curry found that they weren't intended to be that. They're just replacing reservations for the exclusive use of areas on the Statehouse grounds. But assuming that, they— Doesn't that have to be clear, or are you arguing that it is clear, that they didn't have the force of law, that you couldn't enforce them? It is clear that they did not have the force of law, but even if that wasn't clear, what is clear about them is that they vest unfettered discretion in whoever makes the decision about whether to permit someone to be on the Statehouse grounds after 6 p.m. with that, that they do not contain any standards. And those have already been determined to be reasons why other schemes have been found to be unconstitutional, such as in the Thomas v. Chicago Park District case and the City of Lakewood v. Plain Dealer case. Now, if the court looks at it the way that Judge Curry did and said, these are just—it's just a reservation scheme, these aren't regulations under any kind of way to interpret that, or any kind of attempt to restrict use of the Statehouse grounds, then Governor Haley's order is the only purported restriction that's at issue. And that's viewpoint discrimination. Because it says, you, members of Occupy Columbia, cannot be here. You cannot be here protesting, not anyone else. That's the essence of viewpoint discrimination. Say I go home and I find out that there's a law enacted that restricts what Drew Rattiker can say, not what anyone else can say. That's viewpoint discrimination. And that is clear. Now, the—the appellants have characterized the right at issue here as the right to live on or damage public property, and they said that that's not clearly established at the time of these arrests. That's not even the right that's at issue here. They mischaracterized both the content of the complaint and Judge Curry's decision. If we look at Edwards v. South Carolina, the only difference in activity between—other than the content of what the protest was about, in Edwards, and what it is that the occupiers were arrested for doing, was that in the Edwards case, the protesters were moving around by marching, and they were much louder than the protesters involved in this case. That's it. That's the only distinction. That case notes that statehouse grounds are a traditional public forum, they open for protest, and you can't arrest people just for protesting there. And that was clearly established at the time of these arrests. And no reasonable law enforcement official would have thought otherwise, in light of that precedent. Also, the Groh case, Groh v. Campbell. Now, Groh case is a district court decision, it's true. But it said, as the Supreme Court noted in Edwards, statehouse grounds are a traditional public forum, and they can only be constitutionally restricted. Restricted through content-neutral, reasonable time, place, and manner restrictions. What we have here is not a content-neutral restriction. It is a content-based restriction. It says, whatever content is being voiced by members of Occupy Columbia is not permitted to be voiced by them at this place. All of the activity that they complain about, and now say justified these arrests, had ceased. And every bit of it had been permitted by these appellants up to that point. So that was not what these people were arrested for. Yanna pointed out something earlier. We're here on an appeal that, if there were not a qualified immunity issue, could not be before this court. We're here because of the collateral order doctrine, on the appeal of a denial of a motion to dismiss. Do you agree that it's appealable? Do you agree we have jurisdiction under the collateral order doctrine? Yes, Your Honor. I might not like the collateral order doctrine, but I know that it exists. It's the law of the land. But it's a narrow doctrine, and the facts have to be undisputed. Or the appellant has to accept your facts, basically, the facts accepted by the district judge, to take a collateral order appeal on a qualified immunity, as I understand it. That's how I understand it as well, Your Honor. And you agree that they have done that? They accept your version of the facts? Do they accept the district court's version of the facts? They have been trying not to during this entire appeal. Well, they have to to get collateral order jurisdiction. So I'm asking you, you say we have collateral order jurisdiction. So you must be accepting the proposition that they have accepted the facts as they were viewed in your favor by the district judge. Actually, I'm not accepting that proposition. And if that means that this court does not have jurisdiction to hear this appeal, then that's what it means. Maybe you ought to look at the collateral order doctrine. Well, if they have an issue on the qualified immunity, we can't have disputed facts. And the only thing that the court can review on an appeal of denial of qualified immunity under the collateral order doctrine are the conclusions of law that were made by the district court. But based on undisputed facts that are drawn in the proper light by the district court. Well, and the only facts that are actually in the record. Here, we don't have any discovery yet. So that's right. And this was not a motion for the summary? They've got to take your complaint. So they've got to take our complaint. There's some affidavits and exhibits in here also, right? That's correct. But they're part of the complaint. We incorporated them. Maybe they're properly considered also. That's correct, Your Honor. And every argument that they make that takes issue with the content of our complaint and says that's not right, that's not properly reported. But qualified immunity is an important thing, particularly for high public officials. I mean, that's the reason the Korean courts carved out this collateral order exception for important issues. One, I mean, you can't go around suing governors all the time and draw them away from they've got important work to do. I've been faced with litigation all the time every time they make a decision, and other public officials as well. So it's not anything to sneeze at. But the Supreme Court's drawn it very carefully. We have to look at it very carefully. They've told us to. I mean, they keep telling us you've got to watch this collateral order doctrine. And they've slapped down courts of appeals now. And then a couple years ago, one of the justices, I think it was Justice Souter, said we have explained what all we've done, and he said we've meant what we said about this collateral order doctrine. We want everybody to adhere to it. And perhaps this is not properly before this court on the collateral order doctrine. Well, you're the lawyer. And you told me that you don't have any problem with them bringing this appeal on the collateral order doctrine. Let me clarify. This is an appealable order under the collateral order doctrine. To the extent that they're arguing about what the facts are, that's not properly before this court. But because the district court said you're not entitled to qualified immunity at this stage, this is an order that they could appeal. This appeal is not a proper appeal. But they can appeal the order. And I hate to parse it like that, but such is the jurisprudence. And in any event... I don't have any of that in your brief, right? So, Your Honor, we didn't point to that issue. We just noted that this is an order that they could appeal. But they're not entitled to win on the qualified immunity analysis in any event. It's qualified immunity. It's not absolute immunity. And this is a case where the right that's at issue here is something that is clearly established as a protected constitutional right. To look at the complaint in the light most favorable to us, in the light most favorable to the appellees who pled it, you look at it and you see that what these people were doing here was picketing. That's a traditionally recognized protected First Amendment activity. And what they were doing was protesting being denied the ability to protest in the manner of their choice at this place. And that's what they were arrested for doing. That's what they were doing, and that's what they were arrested for doing. They were arrested. They were charged with trespassing. And they were all released on bond, I think the judge said, by sometime in the morning. How long were they held? They were there that night. I cannot tell you the exact time. They were there all night? They were there for most of the night. There were 19 of them, so it took a little bit to process everyone. They were in jail overnight? It depends on when you would qualify, the end of the night being. I can't remember exactly what time. The opinion says in the morning. So they were let out. In the morning. It was definitely, it had passed midnight. There was no question. But they were released on PR bond. That's correct. Then the charges were dropped. That's right. For Dolly, or what they call it in North Carolina. They could have been Nall Prost, but they were dismissed. What's the difference? Nall Prost just says, we can bring this again. Essentially, it is, although not quite, it's analogous to the difference between a dismissal without prejudice and a civil case and a dismissal with prejudice. These were dismissed. The reason that Solicitor Johnson gave for the dismissal is that the actual numbered statute on the tickets that the occupiers were cited as having violated was 1011-20. That's noted in their brief, I believe. They note that. It's also noted in Judge Curry's order. The reason, since the court asked, that Solicitor Johnson gave for dismissing the charges is that protesting is authorized by the First Amendment. What that statute says it prohibits is unauthorized use of the State House and grounds. Use by the public of the State House grounds is authorized. It's authorized 24 hours a day, as long as you're not violating any other law. As hard as they have tried in this appeal, they haven't been able to demonstrate otherwise. And as hard as they have tried to point to something in the record that tends to indicate that any one of these 14 people, or even the group that they were associated with, had violated some other law, they have not been able to do it. To be honest, I've got about five more minutes of time. I'm not sure if I need any more time. I'll be happy to answer any questions that your honors have for me. But otherwise, I'll be happy to take my seat. I think we understand your position. You may disagree with us when you get our opinion. I hope not. Wait and see. I don't know. All right, Mr. Hall, you have some time remaining. Thank you, Your Honor. Let me go back to the analysis again. There was this notion that we have to prove that they violated the law. That's not what we're here about. The question is, what's the constitutional right? Let me ask you something. Do you accept the facts of this record in the light most favorable to the plaintiffs? We do. And as drawn by and related by the district court, viewed by the district court? I quibble a little there. My understanding is that we're on a de novo review. We have some cases that say you have to accept it as viewed by the district court for our review on a collateral order appeal. My understanding is that... I ask it both ways. Well, I understand the nuance. My understanding is that we're here on a de novo standard review and that that means we're essentially, because we're in a 12B and 12C stage here, we're on pleadings. That's all we've got. We're not out of Rule 56. So we don't have any factual judgments or determinations that were made that would be relevant. What we have is pleadings. And so the statement of the right or the articulation of the right wouldn't be from some factual determination that the lower court might have made. It would be from the pleadings. It's a 12B and a 12C. It's not a Rule 56. And Judge Curry was very explicit about that. I mean, she wanted to keep it a 12B and a 12C. Well, you've appealed, as Judge Draxler indicated earlier, a little earlier than happens in some of these cases. If you don't prevail now, is it your view you could go back and conduct discovery and then move for summary judgment again on qualified immunity and then come back up again under Mitchell v. Forsythe? It is. You know, certainly, you know, I think it's advantageous and appropriate, given the purposes of the qualified immunity doctrine, that you come at a 12B and a 12C stage because it's immunity from suit, not just from damages. So, look, I realize we're here on 12B and 12C, but I suggest to you that that's not a negative. That's a positive. That's a positive. The purpose of the doctrine is not to put you through discovery, have you distracted as a professional, as a public actor through a course of litigation, only to be found to have qualified immunity at a summary judgment stage. It is immunity from suit. It is to allow a police officer to do his or her job and not be going through depositions and so forth. So, again, I do think this is an important point. The pleadings, the first question Judge King asked, do you accept the facts? As articulated in the complaint, for the purposes of this legal issue, yes. Anybody's characterization, including the district courts, I don't think so. And I think in a de novo standard at a 12B, 12C stage, we don't have to. And I don't think, frankly, the court could as well. I say that, obviously, very respectfully. But it's the pleadings. And, again, that's why I go back to and beat on this paragraph 83 in isolation problem, to try to isolate the right like that and say that, you know, my kids will tell me when they don't like something or I'll tell them I can't do something. It's a free country. Well, you know, you've got the right to protest and petition the government. Well, of course you do. That doesn't help a court determine whether a right is clearly established. You have to say what's the right sought. The right sought here in the complaint, about which this whole litigation is, is the right to occupy and live there on a 24-hour basis. Nobody disputes that. That's their words. Judge King asked if I accepted the facts. Those are the facts that they articulate. That's what they say this case is about. Now, they were fortunate to have a friendly prosecutor in our area that saw it in a light favorable to them for a variety of reasons. They were fortunate to have a district court that isolated and picked paragraph 83 out of the complaint as the sole basis for the definition of the right. The district court concedes that Carr governs the behavior. The only way you get an issue is if you isolate. And even if you do isolate, a law enforcement officer is supposed to walk up to a 30-day protest and make this distinction when they have three statutes that regulate the use of the grounds, including, or in addition to that, have conditions that are authorized by law. The law delegates to the Budget and Control Board the authority to make regulations and restrictions. They publish conditions. The conditions without dispute were handed to the protesters. The conditions say 6 p.m. on the grounds and 5 in the building. And a police officer has willy-nilly violated the constitutional rights of somebody on that factual background? I don't think so, respectfully. That's what the Qualified Immunity Doctrine is designed to protect law enforcement from. We can make it about governors and whatever. There are law enforcement defendants here and a governor. And when you take the profile away, if you will, that comes with elected public officials and say, what is a police officer supposed to do with these conditions in his or her hand, code sections 10, 11, 20, 30, 330, 70, all in his hand? He's asked someone to leave and they won't. What's he supposed to do? Now, you represent them all, right? Yes. Is there any distinction to be made between them? Are some of the law enforcement officers entitled to qualified immunity and not the governor? I don't believe so. It's a package deal. I believe it is a package deal. I represent the governor. I'm presenting on behalf of all of the defendants. But you're speaking. Oh, I am. And it's a jointly filed brief. It's a package deal. It is a package deal. Don't worry about distinguishing. OK. I see my time is up and I don't want to belabor it. I'm certainly pleased to answer any questions that you all might have. I think we understand. Thank you. We'll come down and greet counsel, then go on to the next case. Thank you all.
judges: William B. Traxler Jr., Robert B. King, Stephanie D. Thacker